1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LEE LAWSON,                              No. 2:17-cv-01276-TLN-GGH

12                Plaintiff,

13        v.                                  ORDER

14   TEHAMA COUNTY; ROGER MEYER;
     DEPUTY SHERIFF BUCK SQUIRE;
15   TEHAMA COUNTY AGENT
     KEITHCURL; and TEHAMA COUNTY
16   AGENT WESTON,

17                Defendants.

18

19                         *INTRODUCTION AND SUMMARY*

20          Plaintiff Lee Lawson ("plaintiff") appears in pro per in this civil rights action alleging

21   violation of his rights under the Fourth, Eighth and Fourteenth Amendments to the federal

22   Constitution, together with a state tort claim for trespassing.  ECF No. 1.

23          Defendant Tehama County and defendant employees of the County ("the County"

24   collectively) move to dismiss the federal claims asserted for failure to state a cognizable legal

25   theory to support them, and to dismiss the state claim for failure to exhaust prerequisite

26   administrative remedies.  ECF No. 16.  Defendant Roger Meyer moves to strike, or alternatively

27   to dismiss, the claim against him against him pursuant to the dictates of California Civil Code

28
                                               1

section 425.16(a), California's Anti-SLAPP statute,[1] and California Civil Code section 47.

As a threshold matter the court notes that a complaint filed by a plaintiff acting in pro per is entitled to enhanced deference by a court ruling on motions for dismissal under Federal Rule of Civil Procedure 12. The courts of this Circuit have long held that a pro per "complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle [him] to relief. All allegations of material fact are taken a true and construed in the light most favorable to the nonmoving party." Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005), *quoting* Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002). These holdings emanate from the Supreme Court's decision in Haines v. Kerner, 404 U.S. 519, 520-521 (1972). Thus plaintiff is entitled to notice of the deficiencies in his complaint and an opportunity to amend unless the complaint's deficiencies cannot be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987), *citing* Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980).

During the hearing held on defendant' motions to dismiss et al. (November 2, 2017), plaintiff indicated that he desired to amend his complaint as he had many supplemental facts to add to the original allegations. After considering the motions, which in part, have merit on the present allegations, and in view of the law which would mandate an amendment opportunity for plaintiff, and in light of promised supplemental facts, the undersigned has determined that it would be more efficient for all concerned to simply allow plaintiff to amend his complaint, and test those allegations in a subsequent motion to dismiss, if at all at this juncture, in the near future. In essence, this order defers the motions to dismiss pending amendment of the complaint.

However, to guide the parties in their subsequent efforts, this order will set forth plaintiff's claims, and track the arguments of the parties on the motions.

*FACTS*

Plaintiff states the following facts in his Complaint. Having recently retired after living for many years in Alaska, plaintiff bought two 160 acres parcels of land in Tehama County on

---

[1]  SLAPP is an acronym to California's Strategic Lawsuit Against Public Participation and will be used here consistently when discussion defendant Meyer's Motion.

October 5, 2016 on which he planned to build a farm with two friends soon to retire from positions in Alaska. Initially he moved a travel trailer onto one of the properties and put it next to an old trailer already on the property which he used to store tools, he hired a contractor to excavate dirt roads to allow travel onto and across the property, and he erected two greenhouses and had a permitted water well installed. ECF 1 at ¶12.

On February 23, 2017 his contractor, Ms. Alexander, was stopped by defendants Keith Curl, Agent Weston, and Deputy Sheriffs Buck Squire and Jerry Jungwirth, who questioned her presence, asked if she were growing marijuana, and informed her they were there in response to a complaint by defendant Roger Meyer. Ms. Alexander notified plaintiff of the contact and indicated she felt threatened by the contact and was afraid to go back to the property. Id. at ¶ 14.

On March 1, 2017 plaintiff received a certified letter titled "Notice of Violation and Proposed Administrative Penalty, giving plaintiff 10 days to "abate the public nuisance," and signed by Keith Curl from the Tehama County Department of Environmental Health. Id. at ¶ 15.

Plaintiff drove 150 miles from his home in Wilton, near Sacramento California, to Red Bluff, California, in Tehama County to meet with Agent Curl who told him he would have to tear down the greenhouses he had erected and remove the travel trailers on the property as none of them were permitted, and further explained that although others had such unpermitted items on nearby properties no one had complained so no demands for removal had been made. Because of the size of the threatened fines plaintiff agreed to take the demanded actions by March 31, 2017. Id. at ¶ 16. Although plaintiff recounts that Agent Curl told him the fines would be $500 per day until abatement, id. at ¶ 17(A), he has since provided copies of the notices which reflect penalties of $100 per day regarding the well, and $100 per day for the travel trailer, and an opportunity to contest the abatements by requesting a hearing before the County Board of Supervisors by a date certain, but also providing that scheduling a hearing would not retard the accumulation of fines. It is important to note that the Notice regarding the well abatement indicates that County officials performed an examination of the well, Attachment to ECF No 18, plaintiff's Response to County Motion to Dismiss, which plaintiff points out required them to go onto plaintiff's property which was posted with "No Trespassing" signs. Id. at ¶ 26.

On March 5, 2017 Ms. Alexander reported that as she attempted to return to the property to repair the road and remove the greenhouses that had been declared a nuisance she discovered the gate to plaintiff's property had been locked, a sign left on the gate, tools were stolen from the storage trailer, the greenhouses had been ransacked and fuel stored in them stolen, a 4 wheeler had been vandalized, and other property was missing. Id. at ¶ 19, 20.

On March 6, 2017, having been unable to reach Deputy Sheriff Buck Squires by telephone, plaintiff returned to Red Bluff to meet with him together with Ms.Alexander. In the Sheriff's absence Deputy Noel Clem advised them to call dispatch and leave a complaint, but suggested a court action would be more promising. Id. at ¶ 21. Upon calling dispatch they spoke with Deputy Chris Smith who informed them he personally had two unpermitted travel trailers on his property and had not been challenged, then met with them to take the complaint and indicated confusion as to why the other deputies refused to take the complaint. Id. at ¶ 21.

Deputy Squires ultimately joined the group and discussed pictures that had been used to identify the structures on plaintiff's property that he said were taken by defendant Roger Meyers but the deputy refused to provide copies to plaintiff.. Id. at ¶23.

### PLAINTIFF'S CLAIMS

Plaintiff pleads claims under the following theories:

1.      42 U.S.C. section 1983 is pled on the factual premises that the County defendants illegally encroached upon plaintiff's property and in the process conducted a search without a warrant as a prelude to issuing the citations for nuisance related to his placement of greenhouses and a trailer on his property, and for having an illegal, unpermitted well on the property. Plaintiff clarified at the hearing on this matter held November 2nd (on facts outside the complaint) that he did have a permit for the well, but the County's attorney explained that plaintiff's contractor, who installed the well had informed the County that the permit was for a domestic well but he had been contracted to install an agricultural well.[2]

The non-governmental defendant, Roger Meyer, is implicated in this claim on the ground

---

[2]  It is curious that plaintiff's contractor believed himself to be a "mandatory reporter," if indeed that was the case.

that he allegedly participated in a conspiracy with the governmental defendants to invade plaintiff's rights, although there were insufficient facts to establish a conspiracy between Meyer and the state actors.

2.      A stand-alone claim for invasion of plaintiff's Fourth Amendment right to be free of governmental searches of his property without a warrant.

3.      Violation of plaintiff's right to equal protection of the law under the Fourteenth Amendment, i.e, an equal protection class of one.

4.      An Eighth Amendment claim for excessive fines.

5.      A State law claim for trespassing by all of the individual defendants.

Plaintiff seeks damages, both compensatory and punitive, attorney fees to cover future actions, an injunction requiring institution and use of appropriate policies and supervision of deputies, officers and agents of the County.

Much of defendants' attacks upon the complaint are procedural in nature but the court will discuss the sufficiency of the substantive allegations in the context of addressing each of the procedural grounds raised.  In discussing these motions the court must use the standards applied in assessing pro se pleadings as discussed above..

*DISCUSSION*

A.     DEFENDANT MEYER'S MOTION

All of the claims against defendant Meyer stem from the factual allegations that he was the complainant regarding the purportedly illegal maintenance of a travel trailer, greenhouses and the water well located on plaintiff's property without permits to support them, and that without this complaint there would have been no action against plaintiff by the County, together with the uncontested allegation that Meyer took photographs of plaintiff's property which formed the basis for the inquiries by the County.

Defendant Meyer's attack is primarily based upon state privileges that preclude actions against persons that emanate from their exercise of the First Amendment right to free speech.

1.     *Plaintiff's Claims are Barred by California Civil Code Section 47*

California enacted Civil Code Section 47 to provide special protection for what it

5

identifies as a "privileged publication or broadcast," one element of which is specifically applicable in this case. This Code section insulates, among other things, communications made by a person to initiate a "proceeding authorized by law" except in situations not involved in this litigation. Here defendant Meyer is charged with having conveyed to law enforcement officials his belief that plaintiff was violating County ordinances by the manner in which he was using his property to erect unpermitted buildings – the greenhouses – and to maintain travel trailers, and an unpermitted water well. The California courts and this federal court have concluded that this code section insulates the speaker in this situation from any tort action that rests *directly* upon the challenged communication. See, e.g., Hagberg v. California Federal Bank FSB, 32 Cal.4th 350, 362 (2004)("many cases have held that the official proceeding privilege applies to a communication intended to prompt an administrative agency charged with enforcing the law to investigate or remedy a wrongdoing"); Stamas v. County of Madera, 795 F.Supp.2d 1047, 1064 (E.D.Cal. 2011)("a person who merely alerts law enforcement to a possible crime and a possible criminal is not liable if law enforcement, on its own after an independent investigation, decides to prosecute") *citing* Williams v .Hartford Ins. Co., 147 Cal.App.3d 893, 898 (1983). (The outcome is quite different for a tort that precedes any contact with governmental officials, see infra.)

Plaintiff alleges only that defendant Meyer is responsible for the investigation and actions of Tehama County officials insofar as he reported permitting violations to County authorities and additionally provided them with his photographs of plaintiff's property as evidence of violations of County ordinances allegedly disclosed by those photographs. Meyers argues that all claims against him must be dismissed pursuant to section 47 as he did no more than exercise his protected right to free speech by his action. This court cannot, however, see an act of alleged physical trespass as part of defendant's speech rights. If, in fact, he trespassed on plaintiff's property, it would appear it was done to gather evidence to support his protected reportage to the County authorities, not as an independent exercise of his right to so report; section 47 does not insulate him from the trespass claim.

2.     *Application of California Code of Civil Procedure § 425.16(c)*

California enacted California Code of Civil Procedure § 425.16 to curtail "strategic

6

lawsuits against public participation actions" (thus inviting the acronym "SLAPP"), after finding

"a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional

rights of freedom of speech and petition for redress of grievances." § 425.16(a). SLAPP suits are

those found to "masquerade as ordinary lawsuits but are brought to deter common citizens from

exercising their political or legal rights or to punish them for doing so." Batzel v. Smith, 333

F.3d 1018, 1023-1024 (9th Cir. 2003) (internal quotation marks omitted). The legislature found

and declared in the enactment of the statute that "it is in the public interest to encourage continued

participation in matters of public significance, and that this participation should not be chilled

through abuse of the judicial process," and, in order to achieve that end the statute was to be

"construed broadly." 425.16(a).

　　California courts apply a two-step process to be employed when analyzing an anti-SLAPP

motion. Hilton v. Hallmark Cards, 599 F.3d 894, 903 (9th Cir. 2010). Under the first prong, the

moving party must make "a threshold showing...that the act or acts of which the plaintiff

complains were taken 'in furtherance of the right of petition or free speech under the United

States or the California Constitution in connection with a public issue,' as defined in the statute.

Equilon Enters., LLC v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002) (*quoting* Cal. Code Civ.

Proc. § 425.16(b)(1))." Under the second prong, the burden shifts to the plaintiff to show "a

probability of success on the merits." Hilton, 599 F.3d at 902. Under this standard, the claim

should be dismissed if the plaintiff presents an insufficient legal basis for it, or if, on the basis of

the facts shown by the plaintiff, "no reasonable jury could find for the plaintiff." Metabolife Int'l,

Inc. v. Wornick, 264 F.3d 832, 840 (9th Cir. 2001) (citation and internal quotation marks omitted).

　　In federal court, the second prong of California's anti-SLAPP statute is applied somewhat

uniquely. "If a defendant makes an anti-SLAPP motion to strike founded on purely legal

arguments, then the analysis is made under Fed. R. Civ. P. 8 and 12 standards; if it is a factual

challenge, then the motion must be treated as though it were a motion for summary judgment and

discovery must be permitted." Z.F. v. Ripon Unified Sch. Dist., 482 F. App'x 239, 240 (9th Cir.

2012) (*citing* Metabolife Int'l, Inc., 264 F.3d at 846). This distinction is important because Rule

56 effectively prohibits courts from disposing of motions involving a factual challenge before

discovery has concluded.  See Metabolife, supra, 264 F.3d at 846 (holding that California Civil Procedure Code § 425.16(g)'s automatic stay of discovery does not apply in federal court in a situation like the instant one because it conflicts with Rule 56(a)'s presumption that discovery takes place before a motion for summary judgment is considered).

Finally, § 425.16 does apply in federal court consideration of diversity matters, and to state supplemental claims in federal question matters.  Makaeff v. Trump Univ., LLC, 736 F.3d 1180, 1184 (9th Cir. 2013).  Section 425.16 does not apply, however, to federal claims in accordance with the Erie Doctrine.  See In re Bah, 321 B.R. 41, 46 (B.A.P. 9th Cir. 2005) ("[W]e do not believe that the anti-SLAPP statute may be applied to federal causes of action."); Bulletin Displays, LLC v. Regency Outdoor Advert., Inc., 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006). This is because to apply the statute to federal claims would frustrate the enforcement of substantive federal rights.  Globetrotter Software, Inc. v. Elan Computer Group, Inc.,, 63 F.Supp.2d 1127, 1130 (N.D.Cal. 1999).  The Ninth Circuit Court of Appeals adopted this position in U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc., 190 F.3d 963, 972-973 (9th Cir. 1999), cert. denied 530 U.S. 1203 (2000), where it acknowledged the applicability of  SLAPP theory to claims brought in federal courts, unless there was a "direct collision" between its application and the federal rules.

The Ninth Circuit has, in applying the foregoing distinction, held that a federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims," Hilton v. Hallmark Cards, 599 F.3d 894, 901 (9th Cir. 2010), and therefore refused to apply SLAPP to claims under the federal Lanham Act.  See also Berman v. McManus, 2012 WL 1455088 *1 2 (E.D.Cal. 2012)(refusing to apply SLAPP to strike a section 1983 claim); Smith v. California Dept. of Corrections, 2006 WL 3518257 * 1 (E.D.Cal. 2006)("Anti-SLAPP may not be used against federal Section 1983 claims"); see also Winters v. Jordan, 2010 WL 2838634 *4 (E.D.Cal. 2010) and cases cited therein.

Thus, in the present case, SLAPP is only relevant in terms of the trespassing claim, which is here on supplemental jurisdiction to the federal claims under 42 U.S.C. section 1983 and the Fourth, Eighth and Fourteenth Amendments to the federal Constitution.  However this court does

not see an alleged act of trespass as implicating any speech factor that would merit the application of SLAPP unless it could be interpreted as an action "taken in furtherance" of defendant's right to petition. The trespass, if such it was, was not however necessary to defendant's exercise of his petition and free speech rights, but was rather an evidentiary expedition to "prove" the truth of his assertions – an action the County certainly would be privileged to undertake, but there is no stated ground to suggest that defendant Meyer was possessed of such a right. Carried to its extreme, any suggestion that Meyer's act of trespass can be shielded by SLAPP would be to open the door to any private party who, for example, believed a citizen was possessed of dangerous explosives, and therefore could break into that citizen's home to take samples or pictures of the offensive substance in support of his ultimate verbal complaint to authorities.

At hearing, defendant Meyer appeared to argue that if any aspect of the lawsuit involved petitioning authorities, than the entire lawsuit would be subject to the SLAPP procedures. Not only is this argument countered by the federal case authority set forth *infra,* but it is bootstrapping to an extreme degree. Here the only viable claim against defendant Meyer, given the present allegations, is the trespass claim. How could it possibly be that this alleged act, which preceded any contact with governmental authorities (unless a conspiracy was in fact extant), requires plaintiff on a motion to dismiss to "prove" the trespass under SLAPP procedures? It cannot.

In essence, defendant has failed to make the threshold showing that the act of trespass of which plaintiff complaints was taken in furtherance of his right of petition or free speech and thus his SLAPP motion will be denied on its merits given the present allegations. Hilton v. Halmark Cards, supra, 599 F.3d 894, 903-904 (9th Cir. 2010). Unless something transformative occurs on plaintiff's amendment, SLAPP should not be raised in any responsive pleading.

Finally, in his Reply Memorandum defendant Meyer provides copies of photographs he asserts to be those he shared with County officials as proof of plaintiff's transgressions, together with an analysis purportedly supplied by an expert, indicating that the photographs were taken from a location outside the boundaries of plaintiff's property in an effort to defeat the trespassing claim. Thus he argues that if trespassing claim is found not amenable to dismissal under SLAPP, it must be dismissed nonetheless as a baseless claim. This argument, however, relies on factual

averments that are not cognizable at this stage of the proceedings, but more properly addressed either in a trial or by way of a motion for summary judgment on the issue of trespass.  Plaintiff must have the opportunity to examine defendant's arguments through discovery and, if possible and if he so chooses, to present his own expert to counter defendant's position.  See Z.F. v. Ripon Unified Sch. Dist., 482 F. App'x 239, 240 (9th Cir. 2012) (citing Metabolife Int'l, Inc., 264 F.3d at 845) and discussion infra at p 8.  This distinction is important because Rule 56 effectively prohibits courts from disposing of motions involving a factual challenge before discovery has concluded.

3.    *Section 1983 Conspiracy Claim*

42 U.S.C. Section 1983 by its very terms requires that a charged defendant must be acting under the power of the state in order to be held liable under this code section.

> Every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia*, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. (Emphasis added.)

Since there is no indication in the pleadings or otherwise that defendant Meyer was a "state actor" when he undertook the actions at issue in this matter, the only basis for which he can be joined as a defendant in a section 1983 action is if he joined with the County officials in a conspiracy "to wrongfully prosecute" plaintiff.  Crowe v. County of San Diego, 608 F.3d 406, 440-441 (9th Cir. 2010).  Under this standard a "common objective to merely prosecute" is insufficient to establish conspiracy – the common objective must be to "falsely" prosecute in violation of constitutional rights.  Id.  According to the compliant, defendant Meyer relayed information to the County authorities that plaintiff had unpermitted structures and an impermissible trailer on his property.  Plaintiff does not dispute the presence of either the structures (greenhouses and an unpermitted well) or the trailer, rather complaining of the behavior

of the County defendants in dealing with the information.

Defendant properly points out the means by which a joinder of a private party in an action under section 1983 may be sufficiently alleged in a complaint. In general, plaintiff must plead that there was "an agreement" or a "meeting of the minds" between defendant Meyer and the state actors to violate plaintiff's constitutional rights. Franklin v. Fox, 312 F.3d 423, 440 (9th Cir. 2002) *quoting* United Steelworkers of Am. V. Phelps Dodge Corp., 865 F.2d 1539, 1540-1541 (9th Ci. 1989). Put another way the complaint must show that the private party was a voluntary and willful participant in a *joint action* with the State or its agents to fulfill a common objective. United Steelworkers at 1541. This may be done by facts to support a claim that Meyer was :endowed with powers or functions governmental in nature, Lee v. Katz, 276 F.3d 550, 554-555 (9th Cir. 2002), *i.e.* was enlisted by the state actors to gather evidence against defendant, that there was a relationship between the private defendant and the state actors to allow the private party actions to be "fairly treated as actions of the State itself, Johnson v. Knowles, 113 F.3d 1114, 1120 (9th Cir. 1997), there were actions of the state that served to coerce or significantly encourage the private actor's behavior thereby converting it into a state action, Kirtley v. Rainey, 326 F.3d 1088, 1093-1095 (9th Cir. 2003), or the state engaged in a position of interdependence with the private party thereby making it responsible for the private party's actions. Franklin, supra, 312 F.3d at 445. No facts that would support any of these "conspiratorial relationships" are found in the Complaint. Nor has plaintiff asserted that defendant Meyer somehow instigated or participated in the subsequent investigation, or in some way controlled the actions of the state actors leading to the imposition of restrictions on the use of his property and subsequent imposition of fines. See Fenters v. Yosemite Chevron, 761 F.Supp.2d 957, 988-989 (E.D.Cal. 2010).

Thus, the effort to incorporate defendant Meyer into a section 1983 action based on a conspiracy between him and the state actors fails for insufficient factual support in the complaint..

4.     *Motion to Dismiss the Trespassing Claim for Lack of Federal Jurisdiction*

Defendant Meyer argues that the trespass claim, not having been dismissed pursuant to SLAPP or section 47, should be dismissed for absence of federal jurisdiction to proceed relying

on the Supreme Court decision in <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726-727 (1966). In <u>Gibbs</u> the Court explained the various situations in which the district court could appropriately exercise its discretion to dismiss state law claims alleged in an action with federal law underpinnings.  Whatever the value of <u>Gibbs</u> to the discussion here, the case was decided long before the statute on supplemental jurisdiction, 28 U.S.C. 1367, was enacted—1990.

In <u>Executive Software North America, Inc. v. U.S. Dist. Court for Cent. Dist. of California</u>, 24 F.3d 1545, 1557, 1558 (9th Cir. 1994), the Ninth Circuit Court of appeals clarified the scope of the discretion announced by <u>Gibbs</u>, holding that a district court considering whether to remove state claims from an ongoing federal case was required "to undertake [a] case-specific analysis" required by 28 U.S.C. section 1367(a).  That code section states:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction *shall include claims that involved the joinder or intervention of additional parties.*  (Emphasis added.)

Subsection (b) of the Act addresses situations in which the court's original jurisdiction is predicated solely on 28 U.S.C. section 1332 (diversity of citizenship), and subsection (c) addresses actions in which (1) the claim raises a novel or complex issue of State law, (2) the challenged claim substantially predominates over the federal claims, (3) the court has dismissed all claims over which it has original jurisdiction; or (4) where the circumstances are exceptional thereby providing a compelling reason for declining to exercise jurisdiction.  None of these 4 exceptions can be found in this case.  <u>Executive Software</u> makes it clear that dismissal without a finding of the exceptions (b) and (c) would be an abuse of the court's discretion.  24 F.3d at 1555-1556.  Neither of these exceptions appear in the present case.  The court's original jurisdiction is here based on 28 U.S.C. section 1331, federal question, not diversity, jurisdiction, the trespass claim at issue does not predominate over the federal claims, and neither the parties nor the court have identified any compelling reason for decline of ongoing jurisdiction regarding the trespass

1 | claim brought against defendant Meyer.

2 |       Meyer also seeks dismissal insofar as he is no longer implicated in federal claims

3 | apparently on the basis that he cannot be held as a pendent party.  Until 2005 the decision in

4 | Finley v. United States, 490 U.S. 545, 556 (1989) barred the entertainment of pendent party

5 | supplemental jurisdiction.  In 2005, the United States Supreme Court recognized the bar which it

6 | then overturned pursuant to a new interpretation of 28 U.S.C. section 1367(a), discussed above.

7 | Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 559 (2005).  In interpreting section

8 | 1367(a), the court opined that it made no sense that the presence of additional parties would

9 | divest the court of jurisdiction "when the presence of additional claims over which the district

10 | court lacks jurisdiction does not."  Id. at 564.  Exxon, which was a diversity case held that

11 | "interpreting section 1367 to foreclose supplemental jurisdiction over plaintiffs in diversity cases

12 | who do not meet the minimum amount in controversy is inconsistent with the text, read in light of

13 | other statutory provisions and our established jurisprudence.  Id. at 567.  Earlier in 2004, the

14 | Ninth Circuit Court of Appeals recognized the existence of "pendent personal jurisdiction and

15 | sanctioned a district court's exercise of discretion with regard to retentions of pendent matters and

16 | parties based upon based on considerations of judicial economy, avoidance of piecemeal

17 | litigation, and overall convenience of the parties being best served by the newly burgeoning

18 | retention doctrine.  Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174, 1181

19 | (9th Cir. 2004).  In essence then there is no distinction of treatment whether the court is

20 | determining proper retention of a pendent state claim or a pendant party so long as the state law

21 | claim that underpins the issue is part of the same case or controversy framed by the federal claim

22 | that created original federal jurisdiction.  Johnson v. Rai Rocklin Investments, LLC, 2017 WL

23 | 3421848 *2-3 (E.D.Cal. 2017).

24 |       Since the trespass case which has been retained with regard to defendant Meyer is an

25 | integral part of the same case or controversy over which this court has original jurisdiction based

26 | upon various federal Constitutional claims, dismissal of Meyer from the case would not serve the

27 | interests that 28 U.S.C. section 1367 was created to protect -- the values of 'judicial economy,

28 | convenience, and fairness to the litigants" as well as comity.  This court will not dismiss this

claim, thereby splitting the plaintiff's case into two distinct parts and unnecessarily burdening the state court with a matter that has begun, and should end, in this court.

B.    THE COUNTY'S MOTION

As a threshold matter the court feels constrained to point out that there is no jurisdiction in this court for a direct action against state actors pursuant to specific federal Constitutional Amendments, but may reach the breach of the right granted by these amendments only through 42 U.S.C. section 1983.  See generally Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912 (9th Cir. 2001) citing Fuller v. M.G. Jewelry, 950 F.2d 1437, 1444 (1991).  Plaintiff has pleaded pursuant to section 1983 but also attempts to state direct actions under the Fourth, Eighth and Fourteenth Amendments.  Although this would appear to be only a technical requirement plaintiff should be aware that he may plead separate 1983 claims arising from breaches of each of these amendments if he is able, but only within the framework of the statute.

1.    *Failure to Exhaust 1983 Claims*

The County defendants challenge the maintenance of this claim against any of them on the ground that plaintiff failed to follow the dictates of California's Tort Claims Act by filing an administrative complaint as a prerequisite to filing a federal civil rights action.  As early as 1974 the Unites States Supreme court declared that there was no requirement for exhaustion of state judicial or administrative remedies in recognition of "the paramount role Congress has assigned to the federal courts to protect constitutional rights."  Patsy v. Board of Regents of State of Fla, 457 U.S. 496, 500-501 (1982) and cases cited there.  This ground to dismiss plaintiff's complaint is incorrect.

2.    *Failure to State a section 1983 Claim against County only*

In Monell v. Department of Social Service of City of New York, 436 U.S. 658, 690-691 (1978) the Supreme Court analyzed the history of the Civil Rights Act of 1871, codified at 42 U.S.C. section 1983 and found that local governing bodies "can be sued directly under [that section] for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers," or based upon a governmental

14

‘custom’ even though such custom has not received formal approval through the body's official decisionmaking channels." Such entities cannot, therefore, be so sued in the *absence* of such policy or "solely because it employs a tortfeasor." Id. at 691. Plaintiff has not alleged any policy ordinance, regulation or decision in bringing his case.[3]

In addition, some 11 years later the high court added to the bases for suit against a public entity – when there is a demonstrable "failure to train" entity employees in such a manner that the failure "reflects a 'deliberate' or 'conscious' choice to so act. City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989). In other words the dereliction with regard to training must "reflect[] deliberate indifference to the constitutional rights of [defendants'] inhabitants. Id. 392.

Plaintiff has painted a factual picture of what occurred, but has not attributed the actions of the individual entity employees to a failure to train or to the effectuation of an offensive policy or custom. In other words, he may have attempted to convey a "deliberate indifference" course of action, but has not succeeded in attributing it to one of these prerequisites to direct action against the entity. To expand the action against the county a section 1983 plaintiff must plead and prove that an entity employee "committed the alleged constitutional violation pursuant to a formal governmental policy or a 'longstanding practice or custom which constitutes the 'standard operating procedure' of the entity, the individual who committed the tort was a "final policy-making authority" who was, therefore, effecting official governmental policy, or such an official ratified the actions of a subordinate who undertook the unconstitutional action. Gillette v. Delmore, 979 F.2d 1342, 1346-1347 (9th Cir. 1972) and cases cited there. See also City of Oklahoma City v. Tuttle, 471 U.S. 808, 819 (1985).

Therefore, even proof of a single action by entity employees that arguably was taken in violation of a constitutional right does not suffice to state a claim but must be shown to be the result of a dereliction of the entity itself, not an attribution of wrongdoing by one or more of its

---

[3] In attempting to meet this requirement it is important to note that a satisfactory complaint is not required to go beyond a "bare allegation that [an] individual officer's conduct conformed to official policy, custom or practice to avoid dismissal of a complaint alleging municipal liability. Alpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001). Once the claim is properly pled the equitable remedies sought by plaintiff directly against the County– declaratory and injunctive relief – are therefore realizable.

employees acting outside the confines of entity policy, custom, or a proper training regimen designed to prevent such acts from occurring.

### 3. *Failure to State a Section 1983 Claim Against County Employees*

"State officials cannot be held liable for damages under section 1983 unless their conduct violates a clearly established constitutional right." Wood v. Ostrander, 879 F.2d 583, 591 (9th Cir. 1989) *citing* Davis v. Scherer, 468 U.S. 183, 194 (1984). Further, such officials are entitled to qualified immunity from suit "if their conduct is objectively reasonable 'as measured by reference to clearly established law." Id. at 591 *quoting* Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The court sets forth guidance here on any amendment of the complaint.

### 4. *Equal Protection Claim*

The County seeks dismissal of plaintiff's equal protection claim on the ground that there is no allegation that plaintiff is a member of a protected class which the County contends is a prerequisite to such a claim. The County has, however, overlooked the United States Supreme Court opinion in Village of Willowbrook v. Olech, 528 U.S. 562 (2000). In Olech a landowner's application to connect property to the municipal water supply was conditioned on the grant to the Village of a 33-foot easement. 529 U.S. at 1074. The landowner pointed out that the Village regulations called only for a 15-foot easement and, ultimately, the Village withdrew its original condition and granted the right with only a 15-foot easement. Id. Olech sued the Village contending that the original easement demand was irrational and wholly arbitrary, motivated by ill will resulting from a previous lawsuit Olech had brought against the Village, and was intended either to deprive plaintiff of her rights or it was imposed in reckless disregard of those rights. Id. The court went on to note that it had earlier recognized the concept of equal protection claims brought by a "class of one" when a plaintiff claims treatment different from that applied to others similarly situated without any rational basis for such disparate treatment. Id. at 563 *citing* Sioux City Bridge Co. v. Dakota County, 260 U.S. 441 (1923), Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336 (1989). Id. at 564.

The Ninth Circuit has, of course, followed Olech, but has also stated more clearly the conditions underlying a "class of one" pleading. In Gerhart v. Lake County, Mont., 637 F.3d

1013, 1022 (9th Cir. 2011), the Court stated the standard to be applied in determining the sufficiency of a "class of one" at the dispositive motion stage as follows.

> To succeed on his "class of one" claim, Gerhart must demonstrate that the Commissioners: (1) intentionally (2) treated Gerhart differently than other similarly situated property owners, (3) without a rational basis. <u>Willowbrook</u>, 528 U.S. at 564, 120 S.Ct. 1073; <u>North Pacifica LLC v. City of Pacifica</u>, 526 F.3d 478, 486 (9th Cir.2008). Although Gerhart must show that the Commissioners' decision was intentional, he need not show that the Commissioners were motivated by subjective ill will. <u>Willowbrook</u>, 528 U.S. at 565, 120 S.Ct. 1073 (rejecting the interpretation that a plaintiff must allege that the governmental action was the result of subjective ill will in a "class of one" claim). The district court erred in holding that no genuine issues of material fact existed and that Gerhart's "class of one" claim failed as a matter of law.

At the pleading stage, then, plaintiff need only plead sufficient facts to demonstrate that he has a plausible claim that may move forward in the face of a motion to dismiss. Here plaintiff has stated that there was a trailer already sited on the land when he purchased it, at least one sheriff's deputy and one other person told him unpermitted trailers were ubiquitous within the County and the deputy stated he had one on his property and had never been told he needed a permit. The allegations at this time are sufficient, although plaintiff is free to add further, concise allegations in an amendment. Of course, additional information may well be developed during discovery procedures that will be completed before a motion for summary judgment or a trial will test the sufficiency of the evidence.[4]

     5.    *Trespass/Fourth Amendment Violation*

The County contends that its officers cannot be held for trespass which is a solely state claim that requires exhaustion of the remedy offered by the State Tort Claims Act before any judicial redress may be sought. California law imposes an administrative exhaustion requirement for state law claims such as the trespass claims brought here against the County employees who allegedly entered plaintiff's land which had been posted with "no trespass" signs. Cal. Govt Code

---

[4] For instance, the court has before it no allegations regarding the administrative procedures or policies in place in the County relating to permits for trailers, structures and wells. Are violators given a period of time to apply for a permit before penalties are affixed? What criteria are in place for determining when a permit will issue and when it will not. This information will await discovery, but its absence at this stage of the proceedings will not suffice as a ground to strike an equal protection claim.

§ 910 et seq.; <u>Bohrer v. City of San Diego</u>, 104 Cal.App.3d 155, 160 (1980); <u>Comm. For Immigrant Rights of Sonoma Cty v. Cty of Sonoma</u>, 644 F.Supp.2d 1177, 1205 (N.D.Cal. 2009); <u>Washington v. Guerra</u>, 2017 WL 1197861 *3 (C.D.Cal. 2017)(applied to prisoner cases).

Plaintiff has the burden of pleading exhaustion of this requirement and has not pleaded that he filed a government claim for his state law trespassing claim. Thus he may not maintain this action against the individual County employees named as defendants for a state law trespass claim. Moreover, plaintiff did not relate at hearing that he had filed a *timely* administrative claim. The court does not see how amendment will help for this state law claim unless he can do so.

As to whether the intrusion of these defendants onto plaintiff's property posted "no trespassing" was a Fourth Amendment violation, one must start with the recognition that the Amendment protects "people, not places" and must rest upon a finding that the owner possessed a "reasonable expectation of privacy" regarding the property invaded. <u>United States v. Jones</u>, 565 U.S. 400, 405-406 (2012), referring to <u>Katz v. United States</u>, 389 U.S. 347, 351 (1967). Thus the fact that there was an actual trespass is not the deciding factor in assessing whether the actions of officers with regard to plaintiff's land constituted a Fourth Amendment violation. <u>Id.</u> at n.5. Rather, plaintiff must be able to show that he had a "reasonable expectation of privacy," in terms of his personal rights, in the sanctity of the property in question. <u>United States v. Baker</u>, 221 F.3d 438, 441-442 (3rd Cir. 2000) (citing Supreme Court authority). It does not appear here that plaintiff's *personal* privacy was affected by the entry on his land since he did not reside there. Instructive for purposes of this case is the decision of the United States supreme Court in <u>Oliver v. United States</u>, 466 U.S. 170, 173, 177 (1984) which is factually congruent with the facts of the present case.

In <u>Oliver</u> agents of the Kentucky State Police went to plaintiff's farm to investigate a report that it was being used to raise marijuana. In so doing they drove past plaintiff's home to a locked gate posted "No Trespassing," followed a footpath past the gate, and found a field of marijuana over a mile from the home. 466 U.S. at 173. Upon review of a district court decision suppressing evidence on the ground that plaintiff's Fourth Amendment rights had been violated by the agents' actions the Court reversed the lower court decision noting that the Amendment

protects only those "'expectation[s] [of privacy] that society is prepared to recognize as 'reasonable,'" id. at 176 *quoting* Katz v. United States, 390 U.S. 347, 361 (Harlan.J., concurring), and concluding that an individual may not demand "privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home." 466 U.S. at 178. See also cases cited at 178-180. This area surrounding the home, known as the "curtilage, is protected to the degree that it "extends to the intimate activity associated with the 'sanctity of a man's home and the privacies of life," and it may therefore be "considered part of home itself for Fourth Amendment purposes. Id. at 180, *quoting* Boyd v. United States, 116 U.S. 616, 630 (1886); see also United States v. Dunn, 480 U.S. 294 (1987). Thus no Fourth Amendment violation is committed when police officers clamber over, or otherwise bypass, a perimeter fence, walk through homeowner's fields and observe the a trailer isolated on the land with no "home" in proximity thereto. And, the same law governs when the issue arises in a civil case. See generally Widgren v. Maple Grove Twshp., 429 F.3d 575 (6th Cir. 2005) (no Fourth Amendment violation when a zoning administrator went past "no trespassing" signs, through open fields to visually observe a zoning violation); Knick v. Township. of Scott, 862 F.3d 310, 318-319 (warrantless search for cemeteries on private land); Conrad v. City of Berea, 243 F.Supp. 3d 896, 906 (N.D. Ohio 2017) (building inspector allowed to pass through fields to visually observe building code violations).

In the instant case it is clear that plaintiff maintained no "home" on the property entered and "searched." Even if there were a home there, the actions in walking through fields and taking pictures of the "home" (if indeed the county employees took any pictures) does not rise to a Fourth Amendment violation. The facts do not portray a the government's intrusion that infringed "upon the personal and societal values protected by the Fourth Amendment." Oliver, supra, 466 U.S. at 182-183. Nor can the intrusion on plaintiff's open field constitute a "search" in the constitutional sense "because that intrusion is a trespass at common law. Id. at 183. Therefore, it does not appear that an amendment to the complaint can be made to state a Fourth Amendment claim. pursuant to the foregoing authorities. Something truly additional in a personal

1    sense would have to have taken place for the Fourth Amendment to be at issue.[5]

2         6.    *Eighth Amendment Claim Fails as a Matter of Law*

3         The Eighth Amendment provides "Excessive bail shall not be required, nor excessive

4    fines imposed not cruel and unusual punishments inflicted."  In Austin v. United States 509 U.S.

5    602, 609-610 (1993) (1989), the Supreme Court held that the Excessive Fines Clause "limits the

6    Government's power to extract payments, whether in cash or in kind 'as punishment for some

7    offense.'"  Plaintiff alleges that he was fined $500 a day for his failure to obtain permits and

8    claims that this fine was excessive under the circumstances.[6]  The County defendants first point

9    out that plaintiff does not allege that he *paid* any fines of any amount and that is true, but easily

10   clarified on amendment.  This is only one of many questions associated with this specific claim.

11   The absence of an answer at this point in the process should not, however, permit the court to

12   dismiss the claim without affording the pro se plaintiff an opportunity to amend.

13        Under constitutional principles "[a] penalty is unconstitutionally excessive if (1) the

14   payment to the government constitutes punishment for an offense, and (2) the payment is grossly

15   disproportionate to the gravity of the defendant's offense."  U.S. v. Mackby, 261 F.3d 821, 829

16   (9th Cir. 2001) *citing* United States v. Bajakajian, 524 U.S. 321, 327–28, 334 (1998).  The

17   Mackby court then analyzed the meaning of a civil sanction in Eighth Amendment terms, as

18   follows:

19            We have held that "a civil sanction that cannot fairly be said solely to serve a remedial
20            purpose, but rather can only be explained as also serving either retributive or deterrent
             purposes, is punishment." Wright v. Riveland, 219 F.3d 905, 915 (*quoting* Austin, 509
21            U.S. at 610, 113 S.Ct. 2801). In determining whether a civil sanction is punitive or
             remedial, "the court considers factors such as the language of the statute creating the
22            sanction, the sanction's purpose(s), the circumstances in which the sanction can be
             imposed, and the historical understanding of the sanction." Louis [v. C.I.R., 170 F.3d
23            [1232] at 1236 [9th Cir. 1999] (*citing* Bajakajian, 524 U.S. at 327–32, 118 S.Ct. 2028).

24

25   _____
     [5]  Again, the Fourth Amendment is not co-extensive with a statutory or common law trespass.
26   But the lack of an administrative claim dooms the state law trespass claim against the County.
     [6]  County defendant points out that, first, attachments to plaintiff's Reply Memorandum reflect
27   only $100 in fines but the court perceives that plaintiff is, albeit not as clearly as one would like,
     alleging that he was fined $100 per day for each of two trailers, each of two greenhouses, and
28   maintenance of an unpermitted well on the property without having acquired permits therefore.

261 F.3d at 830.

At this point the court is in no position to weigh the factors identified by the Circuit Court as it has no information regarding the language of the ordinance upon which the County relies in assessing fines, the circumstances under which it can be imposed, and an understanding of how it has been applied historically. Here we know only that plaintiff felt constrained to dismantle the greenhouses, move the trailers, and cap his well because of the threat of high sanctions for failure to do so. We have no information regarding whether the County regulations considered allowing an unpermitted landowner to cure the deficiency by applying for permits under which circumstances the fine could be reduced or abated as it was in <u>DiBlasi v. Borough of East Rutherford</u>, 2006 W 2246374 (D.N.J. 2006), or some similar action short of imposing penalties.. Perhaps plaintiff can gather this information for inclusion in an amended complaint

*CONCLUSION*

In light of the foregoing, IT IS HEREBY ORDERED:

1.      Plaintiff shall file an amended complaint within 21 days of the filed date of this order; any amended complaint shall be guided by the discussion herein, and any facts must be alleged in good faith;

2.      Defendants' motions are vacated (deferred) without prejudice to renewal upon receipt of an amended complaint. Any such motions shall not contain matters at odds with the discussion herein unless specific authority is cited to demonstrate the incorrectness or non-applicability of the matters discussed. Any renewed motion shall be filed within fourteen (14) days of the receipt of an amended complaint. If no motions are filed, an answer is due at the end of the same fourteen day period.

3.      Plaintiff may file a request to utilize the electronic filing system of this court if he so desires through the Clerk's Office located at 501 "I" Street, 4th Floor, Sacramento, CA 95814.

IT IS SO ORDERED.

Dated: November 7, 2017

<u>/s/ Gregory G. Hollows</u>
UNITED STATES MAGISTRATE JUDGE

21