UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LEE LAWSON,

    Plaintiff,

v.

TEHAMA COUNTY et al.,

    Defendants.

No. 2:17-cv-1276 TLN GGH

FINDINGS AND RECOMMENDATIONS; ORDER

*INTRODUCTION AND SUMMARY*

Plaintiff, Lee Lawson, has filed a civil rights action, and a trespass action against a private citizen, occasioned by visits to his property by many, if not all, defendants. It is not completely clear what occasioned the visits, a vigilance against potential marijuana grows or a disgruntled neighbor, or both, however, crystal clarity on all facts is not required in order for this case to move forward at this time. But the result is crystal clear—plaintiff's property was destroyed (trailers and a well). Plaintiff now submits he has lost the property altogether because of this interference with property rights.

Also, what is crystal clear is that not only are the stated facts of the complaint deemed true for purposes of a motion to dismiss, but also deemed true are *all reasonable inferences* which

could be drawn in plaintiff's favor from the facts. <u>Assoc. for Los Angeles, etc. v. County of Los Angeles</u>, 648 F.3d 986, 991 (9th Cir. 2001). With this standard in mind, defendants' (hereafter either the "individual defendants" or the "County") Motion to Dismiss, ECF No. 26 is recommended denied in part and granted in part.

*THE FIRST AMENDED COMPLAINT, ECF No. 23[1]*

Plaintiff [hereafter "Lawson,"] bought 320 acres in a "remote part" of Tehama County in 2016. Lawson alleges that his neighbor, defendant Meyer ("Meyer")[2] wanted to buy the 320 acres and was unhappy when Lawson came into possession. Improvements were made by Lawson to the "Property" such as extensive road excavation, placing a travel trailer on the Property next to a dilapidated trailer that was already there containing tools and such, and perhaps some greenhouses. Lawson had a well drilled; the permit status of the well is a disputed fact. All told, Lawson alleges expenditures in excess of $200,000 to shape up the Property.

Lawson believes that Meyer had surveyors on or near Lawson's land for reasons then unknown by Lawson. However, Lawson soon received a visit from deputy sheriffs associated with the County's Marijuana Taskforce, and Lawson believes Meyer made a complaint which precipitated this visit. Lawson alleges that for ulterior reasons Meyer expressed or intimated to County officials that Lawson was growing, or preparing to grow, marijuana on the Property and/or was maintaining a public nuisance on his property.

The first encounter on Lawson's property was that of a contractor employed by Lawson for road maintenance. This contractor was roughly questioned by the individual defendants on the Marijuana Task Force ("Agents" Curl and Weston along with deputies Squires and Jungwirth) about whether she was growing marijuana. At this time she heard the individual defendants

////

---

[1] There is no need to detail all of the procedural events preceding the Motion to Dismiss filed by the County defendants which is presently pending this adjudication. Suffice it to say that at the first hearing on the Motion to Dismiss the Complaint, Lawson determined that an amendment was necessary, and the undersigned granted leave to amend. The undersigned's permission to amend and written instructions to Lawson appear at ECF No. 22.

[2] Defendant Meyers has answered the First Amended Complaint; he is not part of this Motion except insofar as allegations against him in the FAC pertain to the moving defendants.

express that Meyers wanted the property, but did not know it had been for sale when Lawson bought it.

Very soon thereafter, defendant Curl[3] sent Lawson a notice informing him he was to abate the public nuisance on his property, alleged at this time to be the "greenhouses," and trailers[4], on the Property. Lawson was informed at a meeting with Curl that Curl was the head of the Marijuana Task Force and that an "investigation was ongoing." Curl also, evidently, had some supervisorial position on environmental law enforcement matters. When Curl was confronted with the fact that many rural properties had unpermitted trailers on them, Curl also related that his Task Force worked on a "complaint" basis—if no complaint was made, no investigation or enforcement was incepted.[5] A factual inference may be drawn at this time that such was a County policy. Pictures of Lawson's "greenhouses" and other structures (later alleged to be taken by Meyer and given to defendant Squires) were shown to Lawson, but Lawson was not allowed to retain them or provided with a copy. Lawson maintains that no marijuana was ever found in any structure on the Property.

Because of the very expensive fines threatened, $500 a day for non-compliance, Lawson believed he had no choice but to remove the greenhouses and/or trailers.[6] Soon thereafter, Lawson received intimidating messages about his road work and especially locking his gate. The tool trailer had been broken into and tools stolen. Soon thereafter, Lawson received another Notice of Violation, this time for a well that had been permitted, and this time by Agent Weston. Further penalties were threatened. Later, Agent Weston provided the Superior Court false information for the purpose of obtaining a "no notice" [administrative] warrant for the authorities to come onto plaintiff's property without notice and destroy the well. The false information

---

[3] Curl is identified not only as part of the Marijuana Task Force, but also as working for Tehama County Environmental Health Department.
[4] It is unclear from the FAC whether there were actual greenhouses on Lawson's property besides the trailers.
[5] In talking with a non-defendant Deputy Sheriff, Smith, the deputy stated to Lawson that he had two travel trailers on his property in his front yard, and no one ever said anything about them.
[6] The undersigned is not sure whether the removal order was just for the travel trailer or all structures.

3

pertained to plaintiff's penchant for violence in respect to firing assault weapons and the like on his property. It was alleged that Lawson might arm himself and use force to deny entrance to the authorities if he knew ahead of time that the authorities were coming. Also, it was falsely alleged in the warrant affidavit that Lawson had implicitly threatened defendant Squire if the County officials were to come back to the property.[7]

Meyer led the authorities through his privately locked gate to plaintiff's property and enabled them to enter unknown to Lawson. The complaint is silent with respect to whether Meyer or Lawson were present when the well was destroyed.

A reasonable inference can be derived from the above facts that the four individual defendants were working with Meyer to ensure that Lawson's structures and well were removed.

*LEGAL STANDARDS*

The purpose of a motion to dismiss is to ascertain whether a legal claim can be stated given the stated facts in the FAC and reasonable inferences in a plaintiff's favor to be drawn from them. Of course, favoring a plaintiff's version has utility only during the pleading stage; the court is making no findings of fact for the case as a whole.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325, (1989); Franklin v. Murphy, 745 F.2d 1221, 1227–28 (9th Cir.1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir.1989); Franklin, 745 F.2d at 1227.

A complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "The pleading must

---

[7] Plaintiff does not allege that facts in the affidavit concerning the propriety of the well itself were false; the FAC is silent on this. Lawson stated at hearing that there were indeed false statements about the well, but these extra-FAC arguments cannot be entertained with respect to this motion to dismiss.

4

contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., *quoting* 5 C. Wright & A. Miller, Federal Practice and Procedure 1216, pp. 235–235 (3d ed.2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Pro se pleadings are liberally construed. See Haines v. Kerner, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir.1988). Unless it is clear that no amendment can cure the defects of a complaint, a pro se plaintiff is entitled to notice and an opportunity to amend before dismissal. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir.1987); Franklin, 745 F.2d at 1230.

And again, reasonable inferences count as facts.

*REQUEST FOR JUDICIAL NOTICE*

The County and individual defendants request judicial notice of several exhibits:

1. The Abatement Warrant and Supporting Application;
2. Notice of Violation etc;
3. (A different) Notice of Violation etc.

Defendants do not indicate for what purpose these documents are sought to be admitted, nor the relevance to this Motion to Dismiss. It appears that defendants would desire to have the court take judicial notice of the truth of the facts contained therein. That the court may not do:

> While the court may take judicial notice of the general meaning of words, phrases, and legal expressions, documents are judicially noticeable only for the purpose of determining what statements are contained therein, not to prove the truth of the contents or any party's assertion of what the contents mean. See, e.g., Hennessy v. Penril Datacomm Networks, Inc., 69 F.3d 1344, 1354–55 (7th Cir.1995); Wilshire Westwood Assocs. v. Atlantic Richfield Corp., 881 F.2d 801, 803 (9th Cir.1989).

> "Judicial notice is taken of the existence and authenticity of the public and

quasi public documents listed. To the extent their contents are in dispute, such matters of controversy are not appropriate subjects for judicial notice." Del Puerto Water Dist. v. U.S. Bureau of Reclamation, 271 F.Supp.2d 1224, 1234 (E.D.Cal.2003). *See* also, California ex rel. RoNo, LLC v. Altus Finance S.A., 344 F.3d 920, 931 (9th Cir.2003) ("requests for judicial notice are GRANTED to the extent that they are compatible with Fed. Rule Evid. 201 and do not require the acceptance of facts 'subject to reasonable dispute.' " Q*uoting Lee*, 250 F.3d at 690*);* Kent v. Daimlerchrysler Corp., 200 F.Supp.2d 1208, 1219 (N.D.Cal.2002); Weizmann Institute of Science v. Neschis, 229 F.Supp.2d 234, 246–47 (S.D.N.Y.2002); Happy Inv. Group v. Lakeworld Properties, Inc., 396 F.Supp. 175, 183 (N.D.Cal.1975); and Chloe Z Fishing Co. v. Odyssey Re (London) Ltd., 109 F.Supp.2d 1236, 1242–43 (S.D.Cal.2000).

U.S. v. Southern California Edison, 300 F.Supp 2d 964, 975 (E.D. Cal. 2004) citing *inter alia* Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001).

Accordingly, to the extent that the existence of the documents *per se* are relevant, judicial notice is accorded those documents. To the extent that defendants desire to have the facts therein admitted to be used in adjudication of the Motion to Dismiss, judicial notice is denied.

A.  *Count I—the Constitutional Violation Claim*

Lawson alleges violations of the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution, but focuses his arguments on the Fourth and Fourteenth amendments.

    1.    First Amendment

There are no facts suggesting that Lawson was punished by governmental authorities for speech, or association, or religious beliefs. While he had verbal run-ins with authorities, Lawson's entire complaint is targeted to the allegations of unlawful governmental conspiracy to essentially run Lawson off his land for the benefit of a private person. Lawson does not link any speech etc. related activity to the destruction of his property.

    2.    Fifth Amendment

The Fifth Amendment claim is entirely a duplication of the Fourteenth Amendment with respect to the claims here, applies in certain respects to general activities of the federal government, and is unnecessary in any event.

////

### 3. Fourth Amendment

Lawson previously asserted that the individual defendants' uninvited entry on plaintiff's land, violated the Fourth Amendment. However, after the initial motion to dismiss ruling, ECF No. 22, in which several cases were cited to demonstrate that entry onto rural acreage by governmental authorities for investigationive purposes did not violate the Fourth Amendment, Lawson focuses only on false statements in the seizure warrant which dealt with the "no notice" provisions.

Generally, false allegations in an affidavit used to procure a warrant can give rise to a Fourth Amendment claim for unlawful arrest or seizure:

> If an officer knowingly or with reckless disregard for the truth includes materially false statements or omissions in a warrant affidavit, an arrest under the warrant can constitute a violation of the suspect's Fourth Amendment rights. Franks v. Delaware, 438 U.S. 154, 157, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). To succeed on her claim, Plaintiff must: (1) offer a "substantial showing" that [affiant's] warrant affidavit contained a false statement or omission that was deliberately false or made with reckless disregard for the truth; and (2) establish that "without the dishonestly included or omitted information the affidavit is insufficient to establish probable cause." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1295 (9th Cir.1999).

Cassette v. Kings County, 625 F.Supp.2d 1084, 1087 (W.D. WA. 2008). See also Pacific Marine Ctr. V. Silva, 809 F.Supp. 2d 1266 (E.D. Cal. 2011) (administrative warrant).

However, Lawson does not allege falsities in those parts of the administrative seizure warrant affidavit which gave rise to the judge issuing the warrant in the first place. The FAC asserts falsities only in those paragraphs which gave rise to issuing the seizure warrant on a "no notice" basis.

Fourth Amendment violations can also occur during the execution of a warrant, see e.g., Los Angeles County v. Rettele, 550 U.S. 609 (2007); Wilson v. Layne, 526 U.S. 603, 610-611 (1999). However, Lawson does not allege that he was injured by the falsities regarding "no notice;" he does not even allege he was at his property when the warrant was executed. The undersigned is unaware of any case which found an actionable Fourth Amendment "execution"

7

violation in the absence of evidence that the execution itself, here the "no notice" provisions, injured the plaintiff in some actionable way.[8]

At hearing, Lawson asserted that he had a multitude of allegations that demonstrated the falsity of the substantive aspects of the administrative seizure warrant. However, the problem is that those allegations do not appear in the FAC. And at some point, the court must end the seemingly never ending pleading stage. It is potentially unfair to defendants to have the facts constantly teased out, month after month, only to find out at the next hearing after being "instructed" by the court, that there might be some additional facts which would allow the statement of a claim. Nevertheless, the undersigned also recognizes the difficulties of appearing pro se, and there is some possible color to Lawson's allegations, and many unanswered questions, which might allow the statement of a Fourth Amendment claim. For this Fourth Amendment claim only, the undersigned will recommend one more attempt at amendment.

    4.    Equal Protection

On the other hand, plaintiff has pled sufficient facts for an equal protection, "class of one," claim. As set forth previously, arbitrary governmental enforcement action directed at one person, and not others similarly situated, constitutes an equal protection violation. The undersigned repeats his discussion from the first motion to dismiss.

The County seeks dismissal of plaintiff's equal protection claim. The discussion starts with the United States Supreme Court opinion in Village of Willowbrook v. Olech, 528 U.S. 562 (2000). In Olech a landowner's application to connect property to the municipal water supply was conditioned on the grant to the Village of a 33-foot easement. 529 U.S. at 1074. The landowner pointed out that the Village regulations called only for a 15-foot easement and, ultimately, the Village withdrew its original condition and granted the right with only a 15-foot easement. Id. Olech sued the Village contending that the original easement demand was irrational and wholly arbitrary, motivated by ill will resulting from a previous lawsuit Olech had

---

[8] Of course, Lawson alleges that he was injured by the terms of the warrant which permitted destruction of his property. But the "no notice" provisions are irrelevant to that contention vis-a-vis a Fourth Amendment violation. However, they may be evidence of state of mind pertinent to the Equal Protection violation

8

brought against the Village, and was intended either to deprive plaintiff of her rights or it was imposed in reckless disregard of those rights. Id.

The court went on to note that it had earlier recognized the concept of equal protection claims brought by a "class of one" when a plaintiff claims treatment different from that applied to others similarly situated without any rational basis for such disparate treatment. Id. at 563, *citing* Sioux City Bridge Co. v. Dakota County, 260 U.S. 441 (1923), Allegheny Pittsburgh Coal Co. v. 26 Commission of Webster Cty., 488 U.S. 336 (1989). Id. at 564. The Ninth Circuit has, of course, followed Olech, but has also stated more clearly the conditions underlying a "class of one" pleading. In Gerhart v. Lake County, Mont., 637 F.3d 1013, 1022 (9th Cir. 2011), the Court stated the standard to be applied in determining the sufficiency of a "class of one" at the dispositive motion stage as follows:

> To succeed on his "class of one" claim, Gerhart must demonstrate that the Commissioners: (1) intentionally (2) treated Gerhart differently than other similarly situated property owners, (3) without a rational basis. Willowbrook, 528 U.S. at 564, 120 S.Ct. 1073; North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir.2008).
> Although Gerhart must show that the Commissioners' decision was intentional, he need not show that the Commissioners were motivated by subjective ill will. Willowbrook v. Olech, 528 U.S.[562] at 565, 120 S.Ct. 1073 [2000] (rejecting the interpretation that a plaintiff must allege that the governmental action was the result of subjective ill will in a "class of one" claim). The district court erred in holding that no genuine issues of material fact existed and that Gerhart's "class of one" claim failed as a matter of law.

All the moving defendants strenuously argue that Lawson has not demonstrated that he was similarly situated to the correct class of persons. Rather than see the class of persons as to those who have trailers or non-habitable structures or quasi-permitted wells against whom no enforcement was taken because no complaint was made, defendants argue that the appropriate class is persons who were complained against but against whom no enforcement was taken, citing Stancuna v. Town of Wallingford, 487 F. Supp. 2d 15, 23-24 (D. Conn. 2007). This argument and case seem to conflict with Willowbrook; the compared class in Willowbrook was *not* those

persons who had filed suits or complaints against the town like plaintiff therein but who nevertheless received the regular easement width, but rather, simply persons who had received the regular width easement in the absence of arbitrary action.

In any event[9], this case, as now pled in the FAC, deals with allegations, and inferences from those allegations, that the individual government defendants conspired with a long-time private landowner, who had an ax to grind against Lawson, as well as a potential profit motive if Lawson were to sell the Property, to harass and intimidate Lawson through the arbitrary enforcement of health and safety or blight ordinances, including the compelled removal of structures and a costly well. Defendants cannot legitimately argue that such actions, if true, would not be an equal protection violation no matter how the class is defined. Whether Lawson will be up to the daunting task of actually proving the truth of these allegations at trial, or even surviving summary judgment, is a matter that does not concern the undersigned at this point.[10]

Defendants do not argue that even assuming the "bad" state of mind exhibited by defendants, the actions against Lawson were taken for good reason. The undersigned thus need not deal with a "one bad, one good" rationale in adjudicating the equal protection claim.

Several of the individual defendants argue that while Curl might be a legitimate defendant, they could not possibly be so held given the dearth of specifically alleged actions in which they personally engaged. However, legitimate inference can be drawn that the individual defendants all engaged in an agreement with Meyer to some degree given their collective

---

[9] The undersigned need not determine whether a "complaint only" enforcement policy *per se* of health and safety ordinances violates the Equal Protection clause because that is not what Lawson has alleged here. He does not simply assert that because actions were not taken against other violators in the absence of a complaint, he has established an Equal Protection violation. He alleges much more including arbitrary or nefarious actions. However, suffice it to say here that such a complaint-only policy *per se* might be suspect. A health and safety ordinance is passed because the health and safety of the community is at stake. To then assert a "so what" to violations simply because a citizen's complaint has not been pressed against the violators, calls into question why the ordinance was passed in the first place, and raises the specter of arbitrary enforcement. On the other hand, if the ordinance is more directed to visual aesthetics, it makes perfect sense to have enforcement directed only where a neighbor's visual sensibilities are reasonably offended to the point where a complaint is made.

[10] While Lawson may not have to allege ill will of the individual defendants, that is what he has alleged, and must prove. In this case, allegations of state of mind demonstrate arbitrariness.

presence at some of the confrontational incidents, their seeming universal membership in the Marijuana Task Force, their contact with Meyer, their possession of pictures taken by Meyer, the possible ulterior motives inferred against the individual defendants by their unsubstantiated suspicions that Lawson was violating marijuana laws, the seeming lack of any real necessity to obtain a seizure warrant to destroy plaintiff's well (at least from what is known at this time), the seeming lack of due process indicated by the alleged facts[11], the state of mind indicating hostile intent against plaintiff occasioned by the placing of false allegations in the seizure warrant of Lawson's propensity for armed violence, and the generally alleged abrupt or brusque treatment of Lawson (as alleged) by all individual defendants.

Again, as pointed out many times by now, the facts and inferences tending to support the above statements may turn out to be universally untrue, or untrue against some of the individual defendants. But this is the pleading stage, and a pro se plaintiff's allegations and inferences are to be liberally assessed. If Lawson is able to prove what is alleged *and* inferred, the FAC states a plausible claim against the individual defendants.

4. Due Process

While Lawson decries the events which gave rise to notices of violation, proposed fines-per-day, and false affidavits, with one possible exception, the FAC does not take issue *per se* with the procedures utilized, or not, utilized to carry out the alleged nefarious actions by defendants. Procedural due process has not been made an issue in the FAC.

The one possible exception are allegations of falsity in the seizure warrant affidavit. However, this issue, if it is one, is better taken care of under a Fourth Amendment rubric, see supra, not the more generalized due process rubric. See Albright v. Oliver, 510 U.S. 266, 274 (1994) holding the more specific amendment should be utilized an action rather than the more general. The undersigned has recommended one final attempt to state a Fourth Amendment claim. Thus, the undersigned sees no procedural due process issue raised by the FAC, and to the

---

[11] Statements have been made by defendants' counsel at hearing that Lawson was afforded much due process, something that Lawson vigorously disputes. There is no legitimate way to establish the bona fides of the assertions *at this stage*. The court awaits presentation of evidence at summary judgment motions.

11

extent it is raised, it should be dismissed.

As far as substantive due process is concerned, the analysis becomes more problematic as the substantive due process claim may be duplicative of equal protection, but not of amendments to the Constitution which precede such a claim. The idea of doubling up constitutional claims may well not apply in such a situation. See Schneider v. County of Sacramento, 2014 WL 4187364 (E.D. Cal. 2014, Mueller, J). Surely if what plaintiff alleges is true—a government actor conspiracy and use of government procedures to unlawfully benefit another private citizen-- such facts would constitute outrageous government conduct and a substantive due process violation. As explained previously, it would be an equal protection violation as well. However, there is no disadvantage to defendants if the two claims are simultaneously stated. The factual proof for either would be identical, and defendants do not demonstrate how it prejudices them for both claims to remain in this action.

The substantive due process claim should not be dismissed.

5. The County As a Defendant

The County moves for its own dismissal on account of any pled, or fairly inferred, fact demonstrating a "policy" for which it should be held liable. If the issue here were simply about the policy of a complaint-based enforcement system, at least for the alleged environmental violations by Lawson of County ordinances, there would not be any doubt at this stage that a Monell "policy"[12] has been pled. But as stated earlier, Lawson's allegations do not involve this simple assertion. Rather they involve an ill willed conspiracy between Meyer and the individual defendants utilizing a complaint based enforcement policy in order to carry out the alleged misdeeds. There are no allegations which would suffice to show the existence of an on-the-record, official policy to harass Lawson. Nor are there any "failure to train" allegations on the part of the County. See City of Canton v. Harris, 489 U.S. 378 (1989).

However, municipal liability can be based upon municipal ratification of bad conduct, or conduct which is engaged in by a "final decision maker." A municipality can ratify its

---

[12] Monell v. Dept. of Social Services, 436 U.S. 658 (1978).

12

employee's conduct by inaction in the face of knowledge of the improper activity which had some causal relationship with the injury, or by outright adoption of the conduct. Long v. City of Los Angeles, 442 F.3d 1178, 1185-86 (9th Cir. 2006); Gilette v. Delmore, 979 F.2d 1342, 1347 (9th Cir. 1992). If the improper conduct is engaged in by an employee who could be construed as a "final decision maker" for the municipality, the alleged improper conduct becomes a "policy" for Monell purposes. Ellins v. City of Sierra Madre, 710 F.3d 1049, 1066 (9th Cir. 2013). The status of a final decision maker is determined by looking at state law. Id.

Lawson has not alleged facts which would allow an inference of ratification. By discussion at hearing, the court is aware of some type of administrative procedure, but those facts are not alleged in the complaint, nor are any of the procedures described. The undersigned is unwilling to allow such, if it is possible at all, to be pursued further given that Lawson was previously informed about the need to allege facts regarding a County policy.

However, there are enough facts alleged which would allow a reasonable inference that either individual defendants Curl or Weston were final decision makers for the purpose of environmental law enforcement. It may well turn out that such a finding is untenable in light of further facts or briefed law, but those facts/state law determinations should await summary judgment motion or trial. The County may remain in this lawsuit for the time being on the "final decision maker" rubric.

*CONCLUSION*

IT IS HEREBY RECOMMENDED:

1. Lawson's First and Fifth Amendment claims should be dismissed without leave to amend;

2. Lawson's Fourth Amendment claim should be dismissed with one final attempt to amend permitted; any amendment must be filed within 20 days after an adoption of these Findings and Recommendations by the district judge, if they are in fact adopted;

3. Lawson's procedural Due Process Claim should be finally dismissed, if indeed, one has been alleged at all;

4. All defendants' motions to dismiss the Fourteenth Amendment Equal Protection

13

and substantive Due Process claims should be denied.

IT IS HEREBY ORDERED:

In the event the above Recommendations are adopted:

1. Defendants may further move to dismiss any Fourth Amendment claim which Lawson may allege upon amendment;

2. No other motion to dismiss may be made; an answer shall be filed within 20 days after adoption of these Findings and Recommendations, except that if Lawson amends to allege a Fourth Amendment claim, the answer shall be filed within 20 days after final resolution of the Fourth Amendment claim;

3. Initial disclosures on all but a Fourth Amendment claim shall be provided pursuant to Fed. R. Civ. Pro 26 no later than 20 days after adoption of these Findings and Recommendations, if adopted; the initial disclosures for the Fourth Amendment Claim shall be provided 20 days after final resolution of a Fourth Amendment claim amendment, if such final resolution permits the claim to move forward;

4. The parties shall submit a joint scheduling status report no later than 20 days after adoption of these Findings and Recommendations, if adopted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 29, 2018

/s/ Gregory G. Hollows
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE